UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | DOCKET NO. 14-cr-128-JDL |
| | ) | |
| ANTHONY THEA | ) | |

DEFENSE SENTENCING MEMORANDUM
ANTHONY THEA

**Summary**

We recommend a sentence for Anthony Thea of sixty-six months, followed by five years of supervised release with standard and special conditions; restitution in the agreed to amount of $1,500; and the required $200 felony assessment. This sentence, which is six months longer than the minimum mandatory five year sentence (60 months) required by statute, recognizes that the iPhone-created videos elevate the case over the minimum. Five years of supervised release will help to assure that Anthony can fully participate in the treatment he needs. A 66 month period of incarceration for a 20-year-old with no prior criminal record is "sufficient but not greater than necessary," based on application of the sentencing factors set out at 18 U.S.C. §3553(a), and in particular upon the nature and circumstances of the offense and the characteristics of the offender. *U.S. v. Martin* 520 F.3d 87, 91 (1st Cir. 2008). It avoids over incarceration and disparity between similarly situated offenders; allows for treatment; and recognizes the overall vulnerability and physical risk to Anthony while incarcerated.

**Characteristics of the Offender**

The PSR, coupled with the Sentencing Support letters[1] and the Report of Dr. Magnuson[2], set out an accurate picture of Anthony. Anthony is a first generation American, the son of Cambodian immigrants who both work as laborers processing seafood, primarily sea urchins. PSR¶¶47-48. Money was always tight. "At a young age he realized that we struggled." Letter of Yean Kim. As a boy, Anthony went from house to house, collecting bottles to earn money. Id. There was not enough money for him to take the driver's education class. Letter of Yorn Kim. The family was evicted from their apartment when Anthony was 18, and they had to split up to live with relatives. Anthony lived with his grandmother and eventually spent some nights at his only friend's house. PSR ¶48. He graduated from Deering High School in 2013, hoping to enter the military and eventually become a police officer. PSR¶ 53, letter of Srey Knox. When arrested in 2014, he was taking classes in at SMMC. ¶54. He had just begun a new job as a cashier for Shaws. He worked four summers as a seasonal laborer at Patten's Farm in Gorham. His grandfather worked for Patten's and helped him obtain the job. His employers comment on his dependability and hard work. ¶57. His family also comments on his being a hard worker and helpful to everyone. This includes caring for his younger brothers; giving up his bedroom for homeless relatives and contributing his earnings so the family could pay the rent, buy food and obtain school supplies for his brothers. "He is a very unselfish, hardworking, caring kid." Letter of

---

[1]Defense Exhibit 2.

[2]Defense Exhibit 1.

Yom Kim.

Anthony does not drink, he does not use drugs, he has never been arrested or been in any prior trouble. PSR¶¶41-46, 52. He has never dated, never had a girlfriend, never kissed a girl and has not participated in any form of sexual contact, male or female. Report of Dr. Magnuson, pp. 3, 5. He is shy and quiet. He describes himself as being "socially awkward throughout his life." Id. p.5. "He has had few friends." Id. His Aunt elaborates: "He is still a child. He still has so much growing up to do. One person's age does not always reflect the person's true maturity level." Letter of Lori Kim.

Anthony confessed and accepted full responsibility when first approached by the agents. He admitted to using Ares file sharing software to download child pornography and to making bathroom videos on his phone. He retrieved and gave the agents his phone and computer drive. PSR¶8.

**Comparison with other Cases**

Cases in this District, and from across the county, demonstrate that a 60- month sentence is frequently imposed in distribution cases. See, Melissa Hamilton, *Lessons from Child Pornography Policy Nullification*, 30 GA. ST. U.L. REV. 375, Winter 2014 (collecting cases); Defense Sentencing Memorandum in *U.S. v. Cameron* 09-cr-24-JAW, ECF#336, 12/5/14. This court has recently undertaken a detailed analysis of the advisory sentencing Guidelines in a child pornography case. *U.S. v. Kevin Rockwell*, 13-cr-91-JDL (decided May 5, 2015). While the facts and offender characteristics are different, the legal discussion

regarding the Guidelines and types of sentences are directly relevant to this case. The court has cited the U.S. SENTENCING COMM'N, REPORT TO THE CONGRESS: Report on Child Pornography Offenses 245 (February 27, 2013), which underscores the difficulty of applying the current advisory Guidelines to a defendant like Anthony Thea.

A case with similarities is *U.S. v. Ervin Melanson, Jr.* (D. Me. 2012) (J. Torresen) (Case No. 12-CR-63-NT), where the defendant distributed child pornography through emails (direct file sharing) and over a Limewire P2P network. Relevant conduct involved over 3,900 pictures. Judge Torresen imposed the minimum mandatory 60-month sentence with 5 years supervised release noting the defendant's youth, (20 at the time), mental health and vulnerability to harm in prison.

Another similar case is *U.S. v. Jonathan Fenton* (D. Me. 2012) (J. Torreson) (Case No. 12-CR-152-NT). *Fenton* involved a large number of images: over 48,000 total (440 videos, including some S&M). All of the "standard" enhancements applied leading to an offense level 34 after acceptance of responsibility. Judge Torresen imposed the statutorily-required minimum mandatory sentence of 60 months and 5 years supervised release. Mitigating facts included a treatment provider report for low risk of re-offending, youth (age 25), physical and mental health difficulties, sexual victimization and vulnerability in prison.

*U.S. v. Blaine Hunter*, (D. Me. 2013) (J. Torreson) (Case No. 13-CR-3-NT) is another open file sharing case with a large number of child pornography images involved (4,000 still images and 100 videos including S&M). Mr. Hunter was allowed to plead to a charge of Possession despite the P2P distribution. Judge Torreson imposed a 33-month sentence with

4

5 years supervised release, saving Mr. Hunter from the five year minimum mandatory sentence applicable had distribution been charged.

In *U.S. v. Aaron Chapman*, 2014 U.S. Dist. LEXIS 124770 (D. Me., 2014) (J. Woodcock) (Case No. 06-CR-56-JAW) (Motion for early termination denied) the defendant "downloaded and distributed" computer images of "adult males having sexual relations with very young girls, some as young as about seven years old." Mr. Chapman plead guilty Distribution. Judge Woodcock imposed the minimum mandatory sentence of 60 months incarceration followed by 5 years supervised release.

In *U.S. v. Jake Rogeski* (D. Me. 2012 (J. Woodcock) (Case No. 12-CR-97-JAW), the defendant was involved in open file sharing of over 400 images and over 100 videos (some including S&M and another 3,000 images in temporary internet files, ECF##17, 34, p.4). "The Defendant admitted he had downloaded child pornography and admitted he had configured the Shareaza program by using the default settings, which he knew created a file folder on his computer that other Shareaza users can share." ECF #17. Rogeski was only charged with Possession, not distribution, despite the P2P usage. Defendant admitted to viewing child pornography from age 12 through his arrest at age 24. ECF#34, p. 4. Judge Woodcock sentenced Mr. Rogeski to 60 months and 10 years supervised.

In *U.S. v. Rogers*, 666 F. Supp. 2d 148 (2009, D. Maine), sent. aff'm 714 F.3d 82 (1st Cir., 2013), the defendant was involved in open file sharing of a video containing child pornography. Mr. Rogers admitted that he downloaded videos of child pornography, as well as illegal images from several websites for 1,500 total guideline images. Rogers moved to

suppress his statements to the police claiming a *Miranda* violation. The District Court denied the motion and Mr. Rogers entered a conditional guilty plea, reserving the right to appeal the ruling on the *Miranda* issue as well as the right to challenge his 60-month sentence. On appeal, the First Circuit decision resulted in the suppression of the statements. *U.S. v. Rogers*, 659 F.3d 74 (1st Cir., 2011). Mr. Rogers then withdrew his guilty plea, and went to trial. Rogers did not testify.  The jury found him guilty and Judge Singal imposed the same 60-month sentence and 8 years of supervised release despite Rogers lack of accepting responsibility.

In *U.S. v. Thomas King*, 741 F.3d 305 (1st Cir., 2014) the defendant produced multiple child pornography videos of his minor stepdaughter masturbating. King made the videos by hiding a small video camera in the stepdaughter's bathroom, which then recorded to an attached computer. Investigators also found four CDs containing child pornography belonging to King. The government agreed to a guilty plea to possession of child pornography. Although King pled guilty, Judge Woodcock found no acceptance of responsibility because King lied about whether he had made the videos knowingly.  Judge Woodcock imposed a sentence of 72 months incarceration. The First Circuit affirmed the sentence, calling the crime involved "particularly repellent."

A case with some similarities to *King* is *U.S. v. John McKenzie* 12-cr-107-JAW (D. Me. 2013). McKenzie produced images of child pornography by using Photoshop to digitally superimpose the faces of children he knew onto the bodies of images of child pornography downloaded from the internet. He bragged to other people about what he had done so.

McKenzie was also involved in open file sharing, with 5,675 images of child pornography involved. Like King, McKenzie was offered a plea agreement to possession. Judge Woodcock imposed a sentence of 72 months and 5 years supervised release.

In *U.S. v. Rouselle*, 2-cr-177-NT (D. Maine, 2012), Rouselle emptied his substantial bank account and fled to the Philippines immediately following the discovery by the police of over 22,500 images of child pornography (including some depicting S&M) that he had been exchanging over an open peer-to-peer network. After his arrest in the Philippines and extradition back to the U.S. he pleaded guilty to possession of child pornography. Judge Torresen sentenced him to 72 months, and 5 years of supervised release.

In *U.S. v. Lester Brown*, 13-CR-20-JAW (D. Me. 2013) the defendant sent and received images of child pornography using email (direct file-sharing), and ultimately over 700 images were involved in the offense. Police investigators seized Brown's computer in a search. Brown then obtained a new computer and continued to view child pornography even after having been caught previously. The second computer was also seized, and additional child pornography images were found. Brown pleaded guilty to Possession (rather than Distribution) under to a plea agreement. Judge Woodcock imposed a 70-month sentence and 5 years supervised release.

Factually similar cases in Maine have resulted in sentences of 60 months[3], while cases with aggravated fact patterns have sentences a year higher, around 72 months[4]. Anthony

---

[3] *Melanson, Fenton, Chapman, Rogeski, Rogers*.

[4] *King, McKenzie, Rouselle, Brown*.

accepts that the bathroom videos are an aggravator. However, Anthony has significant mitigating facts that bring his case below 72 months, including his confession, acceptance, lack of prior record, youth, low future risk, and vulnerability in prison. A sentence of 66 months balances the unique facts of this case is a way that is consistent with sentences imposed in similar cases in this district.

**Vulnerability in Prison**

A downward departure for vulnerability in prison was affirmed by the Supreme Court in *Koon v. U.S.*, 518 U.S. 81 (1996)( police officers convicted of civil rights crimes). *U.S. v. Gonzalez*, 945 F.2d 525 (2d Cir. 1991) (departure affirmed for defendant who had "softness of features" which would make him prey to prisoners); *U.S. v. Lara*, 905 F.2d 599 (2d Cir. 1990) (departure from 10 to 5 years upheld for defendant whose youthful appearance and bisexuality made him particularly vulnerable to victimization, a factor not adequately considered by the Guidelines); *U.S. v. Long*, 977 F.2d 1264 (8th Cir. 1992) (court departed from 46 months to one year home detention based on potential victimization in prison); *U.S. v. Parish*, 308 F.3d 1025 (9th Cir. 2002) (eight level departure granted in child pornography case in part because defendant had "high susceptibility to abuse in prison" due to his demeanor, his naiveté, and the nature of the offense); *U.S. v. Wilke*, 995 F. Supp. 828 (N.D. Ill. 1998) (downward departure based on appearance and conviction of child pornography offense would subject him to physical abuse in prison); *United States v. Ruff*, 998 F. Supp. 1351, (M.D. Ala. 1998)(Ruff would be especially vulnerable to sexual victimization in

prison)[5]. Anthony's vulnerability is recognized in the PSR. ¶78. A variant below guidelines sentence is justified in part by the serious risk Anthony faces while incarcerated. That risk increases over time, both due to continued exposure, and due to the constant turnover of other inmates bringing new threats into the facility.

**Restitution**

The parties have agreed to total restitution of $1,500, representing $1,000 to "John Doe IV" and $500 to "P.V." These are the sole identified victims who seek restitution.

**Special Conditions of Supervised Release**

The defense objects to a small portion of proposed Special Condition 1. As currently proposed the condition says:

> Defendant shall submit to periodic, random polygraph examinations as directed by the probation officer to assist in treatment, case planning, **and/or supervision**. No violation proceedings will arise solely on the defendant's failure to pass a polygraph examination, or on the defendant's refusal to answer polygraph questions based on 5th amendment grounds. Such an event could, however, generate a separate investigation. Defendant shall pay/co-pay for

---

[5] The court stated, "The horrors experienced by many young inmates, particularly those who … are convicted of nonviolent offenses, border on the unimaginable." *Ruff* at 1355-1356; see also David M. Siegal, *Rape in Prison and AIDS: A Challenge for the Eighth Amendment Framework of Wilson v. Seiter*, 44 Stan. L. Rev. 1541, 1544 (1992) (Homosexual rape within male prisons occurs with frightening frequency and brutality.) (citing studies and statistics); Charles M. Sennott, *Prison's Hidden Terror*, Boston Globe, May 1, 1994, at B1 (In American prisons "rape is an entrenched culture tacitly accepted by much of the criminal justice system" and noting that there are 200,000 to 300,000 sexual assaults each year on the 1.3 million male inmates in American prisons).

such services to the supervising officer's satisfaction (emphasis added).

We object to the broad language authorizing use of random polygraph examinations to assist in any aspect of supervision. When imposing special conditions the First Circuit, "along with our sister circuits, [has] consistently required district courts to set forth factual findings to justify those conditions." *United States v. Perazza-Mercado*, 553 F.3d 65, 75 (1st Cir. 2009)(vacating complete ban on pornographic materials); *United States v. Del Valle-Cruz*, 2015 U.S. App. LEXIS 5507 (1st Cir. P.R. Apr. 6, 2015)(vacating no contact with minors provision); *United States v. Medina*, 779 F.3d 55, 71 (1st Cir. P.R. 2015)(vacating several conditions including use of plethysmograph testing as unsupported by the record).

We accept that when coupled with proposed condition 5 on sex offender treatment, the use of polygraph examinations for both case planning and treatment is appropriate. The sole objection is the extension of polygraph testing to *any aspect of case supervision*. The extension is not justified solely because this case involved child pornography. The use of polygraphs is not a condition in any other kind of case. Polygraphs are not required for those on supervision for drug offenses, yet drug addicts are often deceptive and prone to relapse. Polygraphs are not required for those on supervision for fraud offenses, yet frauds involve deception as an element of the offense conduct. The reason given for polygraph examinations in child pornography cases has always been that polygraphs are an accepted and required aspect of sex offender treatment. *United States v. York*, 357 F.3d 14, 20 (1st Cir. 2004). No justification exists in this case for extending the polygraph requirement to other

areas. The language of the proposed condition is so broad that a supervising officer can require Mr. Thea to respond to questions about anything at all, as part of a polygraph examination. Additionally, supervised release does not begin until the period of incarceration is complete; however, overly-broad language is being requested now, when it will be at least five years before the conditions are be implemented.[6] Should Anthony's conduct or technological change warrant, conditions may always be added in the future. Currently the broad language is not supported. We ask that the "and/or supervision" language be removed from proposed special condition 1.

**Conclusion**

Anthony Thea is only 20 years old. He looks even younger. He is vulnerable to physical harm while incarcerated. He has no criminal history and has never before been in trouble. He comes from a close family and has never lived outside of his extended family. He is shy and socially immature. He will benefit from treatment and counseling. He is highly remorseful, appreciative of the wrongfulness of his conduct and presents a low risk for future criminality. He will be a felon for the rest of his life. He will have to register as a sex offender. He will have a lengthy period of supervised release with conditions including treatment and significant limitations on his civil freedom. Five years in a federal prison is

---

[6] A challenge to even a contingent supervised release condition is ripe, and not hypothetical, where the judgment explicitly spells out the condition and the defendant challenges the special condition itself. *United States v. Davis*, 242 F.3d 49, 51 (1st Cir. 2001);*United States v. Medina*, 779 F.3d 55, 66-67 (1st Cir. P.R. 2015)

a long time. A five-year felony sentence is a deterrent sentence and a significant punishment. Based on the totality of the circumstances, application of §3553(a), and in particular upon the nature and characteristics of Anthony Thea, a sentence of 66 months, followed by five years of supervised release with conditions, is sufficient but not greater than necessary in this case.

DATE: May 6, 2015                                    /s/ David Beneman
                                                              David Beneman
                                                              Attorney for Anthony Thea

David Beneman, Federal Defender
P.O. Box 595
Portland, Me 0412-0595
207-553-7070 ext. 101
David_Beneman@fd.org

## CERTIFICATE OF SERVICE

     I, **David Beneman**, attorney for **Anthony Thea**, hereby certify that I have served, electronically, a copy of the within "**DEFENSE SENTENCING MEMORANDUM ANTHONY THEA**," upon **Benjamin Block**, Assistant United States Attorney, United States Attorney's Office, 100 Middle Street, 6th Floor, East Tower, Portland, Maine, 04101 via the ECF system.

                                                                                  /s/ David Beneman
                                                                                  David Beneman

DATE: May 6, 2015